**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| BRUCE BERNARD COLLINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 4:09-CV-68-CDL-GMF |
| | : | 42 U.S.C. § 1983 |
| W. W. ADAMSON, Warden, | : | |
| JUDGE DOUGLAS PULLEN, | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Before the court is the Motion to Dismiss filed by Defendants William W. Adamson, Jim Wetherington, Linda Pierce, Ralph Johnson, and Isaiah Hughley (Doc. 16), and the Motion to Dismiss filed by Defendant Judge Douglas Pullen (Doc. 20). Following the District Court's Order adopting the Magistrate's initial Report and Recommendation dismissing certain Defendants, the only remaining Defendants in this action are Warden Adamson and Judge Pullen. (*See* Doc. 14). Plaintiff was notified of his right to respond on September 8, 2009 and October 16, 2009. (Docs. 17, 22). Plaintiff has timely filed responses to the presently-pending motions. (Docs. 18, 19, 23).

**LEGAL STANDARDS FOR MOTION TO DISMISS**

The standard for a motion to dismiss was altered by the United States Supreme Court case of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which overturned the fifty year old test of "no set of facts" established in *Conley v. Gibson*, 355 U.S. 41 (1957). The Court of Appeals for the Eleventh Circuit addressed the new standard in *Financial Security Assurance, Inc. v. Stephens, Inc.*, stating:

> In order for a plaintiff to satisfy his "obligation to provide the grounds of his entitlement to relief," he must allege more than "labels and

conclusions"; his complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (May 21, 2007) (citations and quotations omitted). Stated differently, the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief," 127 S. Ct. at 1966-67. Moreover, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

500 F.3d 1276, 1282-83 (11th Cir. 2007). In ruling on a motion to dismiss for failure to state a claim, the analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam). The court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Nevertheless, if a complaint does not include sufficient factual allegations "'to raise a right of relief above the speculative level'" and "'to raise a reasonable expectation that discovery will reveal evidence of'" the plaintiff's claim or claims, then the complaint must be dismissed. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 556). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## FACTUAL BACKGROUND[1]

---

[1]Because the District Court already entered an order dismissing Defendants Wetherington, Pierce, Johnson, and Hughley, only the facts relevant to Plaintiff's claims against Defendants Adamson and Pullen will be discussed here.

Plaintiff, a county inmate in the Muscogee County Prison, filed the presently-pending action pursuant to 42 U.S.C. § 1983, alleging various institutional inadequacies at the prison. (Doc. 1 at 4-5). Specifically, Plaintiff contends that (1) county inmates are sent to the prison instead of the Georgia Diagnostic and Classification Center for felony probation violations; (2) county inmates are not eligible for parole or credited with two days for every one day served; (3) county inmates are housed in state inmate dormitories, causing hostile confrontations; (4) county inmates do not receive physical examinations upon their arrival to the prison; (5) county inmates with serious medical conditions are required to seek medical treatment only upon their release because the prison "will not pay their medical bill[s]"; (6) the prison does not have appropriate accommodations for handicapped inmates; (7) the prison does not have a dining hall, and inmates are required to eat in the dormitories close to shower and toilet facilities; (8) the prison has only two commodes for every forty-seven to forty-eight inmates; (9) county inmates are placed in isolation lockdown without outdoor recreation privileges; and (10) the prison "stress[es that it] is a hands on camp." (*Id.* at 4). Plaintiff also appears to complain about discipline he has received while imprisoned and two assaults, at least one of which was allegedly committed by a prison guard. (*Id.* at 5). Finally, Plaintiff claims that Judge Pullen gave him "an illegal sentence." (*Id.*).[2] In redress for these grievances, Plaintiff seeks release from the

---

[2]In a supplemental Response to Defendant Adamson's Motion to Dismiss, Plaintiff also contends that Defendant Adamson lacks the jurisdiction to house Plaintiff at the Muscogee County Prison. (Doc. 19 at 1). Plaintiff apparently claims that he is entitled to the benefit of O.C.G.A. § 17-10-1(a)(3)(A), which provides in relevant part:

> Any part of a sentence of probation revoked for a violation other than a subsequent commission of any felony . . . shall be served in a probation detention center, probation boot camp, diversion center, weekend lock up, or confinement in a local jail or detention facility, or other community correctional alternatives available to the court or provided by the Department of Corrections.

prison; "safeguard against reprisal"; compensatory damages and punitive damages from each defendant in his or her individual and official capacity;  and any other relief the court deems appropriate.  (*Id.* at 6).

## DISCUSSION

### I.    Defendant Adamson's Motion to Dismiss

The central ground for Defendant Adamson's Motion to Dismiss is Plaintiff's failure to exhaust his administrative remedies within the prison grievance system.  (*See* Doc. 16-2 at 2). Defendant contends that Plaintiff's failure to press his grievance throughout the prison system is fatal to Plaintiff's § 1983 claim.  The following provisions of law support Defendant's contention.

#### A.  *Legal Standard*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, the United States Supreme Court has held that an inmate must fully and properly exhaust all available administrative remedies before he can file a Section 1983 lawsuit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

In *Bryant v. Rich*, the Eleventh Circuit addressed the proper form of a pretrial motion

---

According to documents provided by Plaintiff in response to Defendants' motion to dismiss, however, Judge Pullen revoked Plaintiff's probation for the commission of a new felony offense, which renders Plaintiff ineligible under O.C.G.A. § 17-10-1(a)(3)(A).  (Doc. 23-2 at 3).  Moreover, Plaintiff did not assert this claim in his Complaint, and as such, the court should not consider it.

challenging a plaintiff's failure to exhaust his administrative remedies, holding:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)).  A judge may resolve factual questions when deciding a motion to dismiss for failure to exhaust nonjudicial remedies.  *Id.* at 1376.  After its decision in *Bryant*, the court developed a two-step process to assist courts in deciding a motion to dismiss for failure to exhaust administrative remedies.  In *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008), the court specifically held:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . .  If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.  The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.  Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (internal citations omitted); *see also Williams v. Marshall*, 319 F. App'x 764, 767 (11th Cir. 2008) (per curiam).

In this case, Plaintiff asserts various deficiencies in the conditions of his confinement and apparently seeks to assert an excessive force claim regarding assaults on two occasions.  In addition, Plaintiff's allegations related to his placement in isolation for eleven days "[f]or nothing" could arguably be construed as asserting a retaliation claim.  These claims, however, are subject to dismissal

because Plaintiff has failed to exhaust them through either the prison's Grievance Procedure or the prison's Disciplinary Appeals Procedure.

B.      *Exhaustion of the Prison's Grievance Procedure*

First, Plaintiff failed to exhaust his claims through the Grievance Procedure provided by the prison. Defendant Adamson has provided an affidavit by Hiawatha L. Covington, Deputy Warden of the Muscogee County Prison, confirming that the prison has adopted the Georgia Department of Corrections Standard Grievance Policy as its administrative grievance procedure. (Covington Aff. ¶ 6, Aug. 20, 2009). Covington also confirms that each county inmate entering the prison meets with a counselor who, among other things, provides each inmate with a copy of the Muscogee County Prison Inmate Handbook containing the prison's grievance procedure. (*Id.* ¶¶ 4-6). Defendant Adamson also provides a copy of Plaintiff's signed "Inmate Orientation Checklist," which indicates that the grievance procedure was discussed with him by his counselor. (*See id.* at ¶¶ 9, 10).

Covington explains that "[w]hen any inmate first files his grievance, he does so on a form entitled 'Informal Grievance Form.'" (Covington Aff. ¶ 13). This informal grievance is then forwarded to the Grievance Coordinator, the Area Supervisor, and a counselor. (*Id.* ¶ 14). The counselor responds to the informal grievance and checks "yes" or "no" to indicate whether the complaint is resolved, and the inmate signs indicating his agreement with the resolution listed on the grievance. (*Id.* ¶¶ 15, 16). If the informal grievance cannot be resolved, an inmate can request a "Formal Grievance," which is ultimately decided upon by the Warden of the prison; in this case, Defendant Adamson. (*Id.* ¶ 17). "An appeal of a Formal Grievance to the Warden exhausts the grievance system offered at the Prison to County Inmates." (*Id.* ¶ 19).

Covington, who is the custodian of the records for the grievance system and who also

supervises the counselors and the grievance system, attests that she never received any Formal Grievances from Plaintiff.  (Covington Aff. ¶¶ 19-21).  Likewise, Defendant Adamson avers that he never received any Formal Grievances from Plaintiff.  (Adamson Aff. ¶ 21, Aug. 21, 2009). Furthermore, on each of Plaintiff's three Informal Grievances  received by prison officials, Plaintiff signed acknowledging that his complaint had been resolved.  (Covington Aff. ¶ 24).  It is therefore apparent that Plaintiff failed to exhaust his claims through the prison's Grievance Procedure.

       C.    *Exhaustion of the Prison's Disciplinary Appeals Procedure*

       To the extent Plaintiff asserts that his constitutional claims were somehow related to the discipline imposed upon him while imprisoned, he has an additional avenue of appeal which he likewise failed to exhaust.  If an inmate "believed that he was receiving Disciplinary Reports based upon improper actions of the Prison officers such as retaliation, misconduct, or harassment, then he could have presented such claims through either the Disciplinary Appeal Procedure or through the Grievance Procedure," discussed above.  (*Id.* ¶ 20).

       As previously discussed, Plaintiff failed to file any Formal Grievances related to the claims he asserts in his Complaint, and he therefore failed to exhaust the prison's Grievance Procedure as to these claims.  (Covington Aff. ¶ 21; Adamson Aff. ¶ 21).  Likewise, Plaintiff failed to exhaust the prison's Disciplinary Appeal Procedure.  The prison's disciplinary procedure begins with the issuance of a "Disciplinary Report."  (Adamson Aff. ¶ 11).  An inmate is advised of his or her right to appeal an adverse disciplinary action, and "[t]he procedure at the Prison is to give all inmates, regardless of whether they request it, an 'Appeal Form.'" (*Id.* ¶¶ 12, 13).  When an inmate appeals the decision of the Hearing Officer, the Appeal Form, the full Disciplinary Report, and any supporting documentation are forwarded to the Warden for final review, thereby terminating the appeals process for disciplinary

actions.  (*See id.* ¶¶ 14, 15).  Defendant Adamson is the custodian for Disciplinary Reports and Appeals.  (*Id.* ¶ 16).

Plaintiff in this case received twelve Disciplinary Reports during the relevant period of his incarceration.  (Adamson Aff. ¶ 17).  Of these reports, Plaintiff appealed only one. (*Id.* ¶ 18).  It is thus clear that Plaintiff failed to exhaust his administrative remedies with respect to the remaining eleven Disciplinary Reports.  Furthermore, in the report Plaintiff did appeal, he made no mention of any constitutional violation; instead, he merely asserted his innocence of the alleged infractions.[3]  (Ex. A to Doc. 16 at 2).  While "[a]n inmate plaintiff obviously cannot provide information that he does not know at the time . . . he must provide as much relevant information as he reasonably can so that officials passing on the grievance can make an informed and reasonable investigation and respond to the grievance."  *Priester v. Rich*, 457 F. Supp. 2d 1369, 1372  (S.D. Ga. 2006), *aff'd sub nom. Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008); *see also Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000) (requiring "a prisoner to provide in his administrative grievance as much relevant information about his claims . . . as the prisoner reasonably can provide").  Courts within the Eleventh Circuit have therefore held that a plaintiff must "present the 'notice-pleading' level core of his case to administrators."  *Priester*, 457 F. Supp. 2d at 1372  (citing *Hooks v. Rich*, 2006 WL 565909, at *6 (S.D. Ga. Mar. 7, 2006) (unpublished opinion)).

---

[3]Plaintiff's "Reason for Appeal" was:

I didn't do anything of these, all I was doing was coming in from detail.  The Lt. in D.R. Court said he believed some of it all I ask is look at the tape, but I'm guilty. . . .  Everyone knows I'm telling the truth but in a place like this it don't matter.

(Ex. A to Doc. 16 at 2).  This disciplinary report was ultimately expunged.  (*See* Adamson Aff. ¶ 18; Ex. A to Doc. 16 at 1).

In this case, Plaintiff's appeal of his Disciplinary Report could not have put Defendant Adamson on notice that Plaintiff was making the claims he later asserted in his Complaint—an excessive force claim, a retaliation claim, or a claim regarding the conditions of his confinement. The primary purposes of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Each of these purposes is thwarted by Plaintiff's failure to include his constitutional claims in his Disciplinary Report. Thus, even to the extent Plaintiff's claims could be construed as related to his discipline, thereby rendering the Disciplinary Appeal Procedure available to Plaintiff, Plaintiff has failed to exhaust his administrative remedies.

In sum, it is recommended that Defendant Adamson's Motion to Dismiss be GRANTED because Plaintiff has failed to timely exhaust both the Grievance Procedure and the Disciplinary Appeals Procedure with respect to the allegations made in his Complaint. Because these exhaustion issues can be resolved at the first level of the *Burnside* review, there is no need to proceed to the second step. Plaintiff's failure to exhaust his administrative remedies precludes the court from reviewing Plaintiff's claims against Defendant Adamson.

## II.     Motion to Dismiss Filed by Judge Pullen

Plaintiff mentions Judge Pullen only once in his Complaint, alleging that Judge Pullen gave him "an illegal sentence." (Doc. 1 at 5). Plaintiff further describes this illegal sentence in his Response to Judge Pullen's Motion to Dismiss. (*See generally* Doc. 23). Judge Pullen submits that to the extent Plaintiff challenges an act rendered in his official capacity, Judge Pullen is entitled to

9

Eleventh Amendment immunity and that he is not a "person" subject to suit under 42 U.S.C. § 1983. In addition, Judge Pullen asserts the defense of absolute judicial immunity for any claims for damages brought against him in his individual capacity.

The U.S. Supreme Court has held that state officials, acting in their official capacities, are not "persons" subject to suits for damages under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996) (noting that Alabama state court judge was immune from damages in his official capacity). Thus, to the extent Plaintiff asserts a damages claim against Judge Pullen in his official capacity, such claim must be dismissed.

Moreover, it is well-established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (internal quotation marks omitted). "The Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under section 1983." *Simmons*, 86 F.3d at 1084. First, the court must determine "whether the judge dealt with the plaintiff in a judicial capacity." *Id*. Second, the court must determine "whether the judge acted in the clear absence of all jurisdiction." *Id.* at 1085 (internal quotation marks omitted); *see also Stump*, 435 U.S. at 356 ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.").

Judge Pullen was acting in his judicial capacity when he imposed the allegedly unlawful sentence on Plaintiff. The conduct that Plaintiff alleges was illegal "was a normal judicial function

10

in a case pending before the judge . . . and arose from dealings with the judge in his official capacity."
*Rolleston v. Eldridge*, 848 F.2d 163, 164 (11th Cir.1988); *see also Stump*, 435 U.S. at 362 (holding that in determining whether a judge's action was "judicial," a court should examine "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity"); *see also* O.C.G.A. §§ 17-10-1; 17-10-3. (describing judges' responsibilities in imposing sentences). Judge Pullen was also acting within his jurisdiction when he sentenced Plaintiff. *See* Ga. Const. Art. VI, § IV, ¶ i (granting superior courts exclusive jurisdiction over trials in felony cases, except those felony cases involving juvenile offenders); O.C.G.A. §§ 17-10-1; 17-10-3. Because Judge Pullen acted in a judicial capacity and within the scope of his jurisdiction when he sentenced Plaintiff, Judge Pullen is absolutely immune from suit on Plaintiff's § 1983 claims. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (noting that section 1983 did not abrogate the well-established doctrine of judicial immunity); *see also Holt v. Crist*, 233 F. App'x 900, 903 (11th Cir. 2007) (per curiam) (holding that judge-defendant was entitled to judicial immunity when "all of the allegations [the plaintiff] made against [the judge] relate to orders entered and actions taken (or not taken) in a case pending before [the judge]").[4]

---

[4]In addition to his claims for monetary damages, Plaintiff also seeks release from jail and "safeguard against reprisal." (Doc. 1 at 6). Although Judge Pullen would not be immune from a suit for prospective injunctive relief, *see, e.g.,Will*, 491 U.S. at 71 n.10, Plaintiff's allegations do not demonstrate that such relief is appropriate. "In order to warrant injunctive relief, the party must demonstrate a substantial likelihood of irreparable injury, which is neither remote nor speculative, but actual and imminent." *Holt*, 233 F. App'x at 903-04 (internal quotation marks omitted). Plaintiff in this case has failed to allege the existence of an actual and imminent threat of future injury, and to the extent he seeks prospective injunctive relief, his claims should be dismissed. *See id.* To the extent Plaintiff claims the illegality of his sentence warrants his release from jail, this relief is unavailable under 42 U.S.C. § 1983. *See, e.g., Mitschell v. Donald*, 213 F. App'x 920, 923 (11th Cir. 2007) (per curiam) (affirming district court's conclusion that the prisoner-plaintiff's "attempt to use § 1983 to obtain immediate release from prison was improper" since it "attack[ed] the duration of his prison sentence, not the conditions of his confinement").

In sum, Judge Pullen is not a "person" for purposes of Plaintiff's § 1983 claim, and he is absolutely immune from suit.  Accordingly, Plaintiff's claims against Judge Pullen are subject to dismissal, and this Defendant's Motion to Dismiss should also be granted.

WHEREFORE, IT IS HEREBY RECOMMENDED that Plaintiff's Complaint be DISMISSED in its entirety.  Under 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE within TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 19th day of November, 2009.

                    S/G. MALLON FAIRCLOTH
                    UNITED STATES MAGISTRATE JUDGE

mkw